Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

Counsel for FCA US LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Old Carco LLC, *et al.*, | : | Case No. 09-50002 (SMB) |
| | : | |
|                    Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| | : | |
| David Dearden, as Executor of the Estate of | : | Adv. Proc. No. 17-01062 (SMB) |
| Edward J. Dearden, *et al.*, | : | |
| | : | |
|                    Plaintiffs, | : | |
| | : | |
|                 -v- | : | |
| | : | |
| FCA US LLC and Chrysler Group LLC, | : | |
| | : | |
|                    Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FCA US LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO DISMISS COUNTS ONE AND THREE**
**OF PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

    A.    The Sale Order and MTA ......................................................................2

    B.    Plaintiff's Claims ..................................................................................7

JURISDICTION ......................................................................................................9

ARGUMENT ...........................................................................................................9

I.      THE SALE ORDER BARS PLAINTIFF'S CLAIMS AGAINST FCA US.....................10

    A.    Count III Seeking Punitive Damages is Barred. ...................................10

    B.    Count I Alleging Negligence is Precluded............................................14

II.    PLAINTIFFS HAVE NOT ASSERTED AN INDEPENDENT CLAIM AGAINST FCA US .....................................................................................15

CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)...................................................................................................9

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)...................................................................................................9

*Burton* v. *Chrysler Group (In re Old Carco LLC)*,
492 B.R. 392 (Bankr. S.D.N.Y. 2013)......................................................................3

*Evergreen Solar, Inc.* v. *Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, Case No. 08-01633, 2011 WL 722582 (Bankr. S.D.N.Y. Feb. 22, 2011)......................3

*Harris* v. *Mills*,
572 F.3d 66 (2d Cir. 2009).........................................................................................9

*Howard* v. *Howard*,
740 N.Y.S. 2d 71 (N.Y. App. Div. 2002) ......................................................... 12-13

*Johnson* v. *State Farm Life Ins. Co.*,
695 F. Supp. 2d 201 (W.D. Pa. 2010).......................................................................14

*Kirkbride* v. *Lisbon Contractors, Inc.*,
555 A.2d 800 (Pa. 1989)............................................................................................13

*Law Debenture Trust Co. of New York* v. *Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010).......................................................................................13

*In re Motors Liquidation Co.*,
529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part, vacated in part*, *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016) .................................... 17-18

*In re Motors Liquidation Co.*,
568 B.R. 217 (Bankr. S.D.N.Y. 2017).......................................................................17

*In re Motors Liquidation Co.*,
Case No. 09-50026, 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) ............................17

*In re Old Carco LLC*,
538 B.R. 674 (Bankr. S.D.N.Y. 2015).......................................................................12

*Tennis* v. *Ford Motor Co.*,
730 F. Supp. 2d 437 (W.D. Pa. 2010).......................................................................13

*Wolff* v. *Chrysler Group LLC (In re Old Carco LLC)*,
No. 10-05007, 2010 Bankr. LEXIS 6320 (Bankr. S.D.N.Y. July 30, 2010) ...........................16

**Statutes and Rules**

28 U.S.C. § 157.............................................................................................................................9

28 U.S.C. § 1334...........................................................................................................................9

Fed. R. Bank. P. 7012 .............................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................1, 9

Defendant FCA US LLC ("FCA US") (f/k/a Chrysler Group LLC), hereby submits this memorandum of law in support of its motion (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss Count One and Count Three of the Amended Complaint [Dkt. No. 1, Ex. 89] ("Complaint" or "Compl.") asserted against FCA US in the above-captioned adversary proceeding by David Dearden, as Executor of the Estates of Edward J. Dearden and Theresa J. Dearden ("Plaintiff").

## PRELIMINARY STATEMENT

1.      Plaintiff Dearden seeks to impose punitive damages on FCA US in connection with a purported Product Liability Claim resulting from a multi-vehicle accident involving a 1995 Jeep Grand Cherokee vehicle manufactured and sold by Old Chrysler prior to the sale of substantially all of Old Chrysler's assets to FCA US.  Furthermore, Plaintiff seeks to impose negligence liability on FCA US for Old Chrysler's conduct.  Permitting Plaintiff to do either would vitiate the clear and unambiguous protections set forth in this Court's Sale Order.

2.      Plaintiff bases its liability claims on an alleged design defect in the Old Chrysler vehicle and "Chrysler's" actions, and then impermissibly tacks on a punitive damages claim on the basis of allegations of a delayed recall of the Deardens' vehicle.  As this Court has repeatedly determined, FCA US is not liable for claims relating to defects in Old Chrysler vehicles except to the extent that FCA US expressly assumed liability for such claims pursuant to certain narrow exceptions set forth in the Sale Order and the Master Transaction Agreement. Similarly, FCA US is not a successor to Old Chrysler and is not liable for the conduct of Old Chrysler.

3.     Plaintiff's attempt to manufacture a punitive damages claim against FCA US must be rejected because the punitive damages claim is barred by the plain and unambiguous language of the Sale Order approved by this Court, and the Master Transaction Agreement entered into thereunder.  Plaintiff's punitive damages claim is plainly "relating to" the personal injury and wrongful death claims at issue—as it must in order to be viable—and is thus barred by the Sale Order.

4.     Furthermore, even if the punitive damages allegations could somehow give rise to a separate claim—they cannot—the Complaint asserts that FCA US delayed in enacting a recall for the Old Chrysler vehicle that should have been ordered much earlier. However, the Complaint's failure to differentiate between Old Chrysler and FCA US is fatal to any argument that Plaintiff is seeking to pursue a truly independent claim against FCA US related to a delayed vehicle recall.  Accordingly, Count One (negligence) and Count Three (punitive damages) of the Complaint against FCA US must be dismissed with prejudice.

## BACKGROUND

**A.     The Sale Order and MTA**

5.     On April 30, 2009, Old Carco LLC ("Old Carco") and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Old Chrysler") commenced bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

6.     At the outset of their chapter 11 cases, the Debtors focused on an expedited process for the sale of certain assets to FCA US (then known as New CarCo

Acquisition LLC).[1]  On April 30, 2009, FCA US entered into a Master Transaction Agreement (as amended and including all ancillary documents thereto, the "MTA") by and among FCA US, Fiat S.p.A., Old Carco, and certain other sellers identified therein.[2]

7.     On May 3, 2009, Old Chrysler moved for entry of an order authorizing and approving, among other things, (i) Old Chrysler's entry into and performance under the terms and conditions of the MTA (*see* Bankr. Dkt. Nos. 3071-1 and 5988); and (ii) the sale by Old Chrysler of substantially all of its assets to FCA US pursuant to the MTA, free and clear of all claims and liabilities "whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability," other than expressly "Assumed Liabilities" (as defined in the MTA) [Bankr. Dkt. No. 190 at 25].[3]

8.     On May 27, 2009, FCA US was the successful bidder in the Debtors' asset sale.  On June 1, 2009, following a multi-day trial, the Bankruptcy Court granted the Sale Motion and approved the transaction set forth in the MTA in its Order (I) Authorizing the Sale of

---

[1]     New CarCo Acquisition LLC changed its name to Chrysler Group LLC and later to FCA US LLC.

[2]     A copy of the MTA is attached as Exhibit B to the Declaration of Brian D. Glueckstein in Support of FCA US LLC's Motion to Dismiss Counts One and Three of Plaintiff's Amended Complaint (the "Glueckstein Decl." or "Glueckstein Declaration").  The Glueckstein Declaration is being submitted for the Court's convenience to provide copies of the MTA and Sale Order that are available on the Court's docket.  As this Court has previously held, it may take judicial notice of the Sale Order and MTA in adjudicating this motion to dismiss without converting the Motion to one for summary judgment.  *Burton* v. *Chrysler Group (In re Old Carco LLC)*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013) (holding that the Sale Order and MTA are subject to judicial notice and noting that the transfer order requires their consideration); *see also Evergreen Solar, Inc.* v. *Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, Case No. 08-01633, 2011 WL 722582, at *3 n.6 (Bankr. S.D.N.Y. Feb. 22, 2011) (noting that on a motion to dismiss a court may consider matters that may be taken on judicial notice, including prior orders).

[3]     The MTA was initially submitted as Exhibit A to the motion requesting the Court's authorization to execute the sale.  The final copy of the MTA was attached as Exhibit A to Old Carco Liquidation Trust's Omnibus Reply to Objections to the Assumption and Assignment of Supplemental Executive Retirement Plan, filed Jan. 31, 2013 [Bankr. Dkt. No. 8139], and does not differ from the initial copy of the Agreement attached to the Sale Motion in any relevant respect.  Unless otherwise specified, "Bankr. Dkt. No." refers to the docket for Case Number 09-50002 (SMB) in the United States Bankruptcy Court for the Southern District of New York, and "Dkt. No." refers to the docket for this adversary proceeding.

Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and

Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts

and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting

Related Relief [Bankr. Dkt. No. 3232] (the "Sale Order").[4]

9.      The sale, on the terms set forth in the MTA, closed on June 10, 2009 (the

"Closing Date").  The Sale Order authorized the transfer of the purchased assets "free and clear

of all Claims except for Assumed Liabilities" (as defined in the MTA).  (Sale Order ¶ 9.)  The

Court expressly ruled in the Sale Order that:

> **Except for the Assumed Liabilities expressly set forth in the
> Purchase Agreement** or described therein or Claims against any
> Purchased Company, **none of the Purchaser, its successors or
> assigns or any of their respective affiliates shall have any
> liability for any Claim that** (a) arose prior to the Closing Date,
> (b) relates to the production of vehicles prior to the Closing Date or
> (c) otherwise **is assertable against the Debtors or is related to
> the Purchased Assets prior to the Closing Date**. The Purchaser
> shall not be deemed, as a result of any action taken in connection
> with the Purchase Agreement or any of the transactions or
> documents ancillary thereto or contemplated thereby or the
> acquisition of the Purchased Assets to: (a) be a legal successor, or
> otherwise be deemed a successor to the Debtors (other than with
> respect to any obligations arising under the Assumed Agreements
> from and after the Closing); (b) have, *de facto*, or otherwise,
> merged with or into the Debtors; or (c) be a mere continuation or
> substantial continuation of the Debtors or the enterprise of the
> Debtors. Without limiting the foregoing, the Purchaser shall not
> have any successor, derivative or vicarious liabilities of any kind
> or character for any Claims, including, but not limited to, on any
> theory of successor or transferee liability, *de facto* merger or
> continuity, environmental, labor and employment, products or
> antitrust liability, whether known or unknown as of the Closing,
> now existing or hereafter arising, asserted or unasserted, fixed or
> contingent, liquidated or unliquidated.

---

[4]      A copy of the Sale Order is attached as Exhibit A to the Glueckstein Declaration.

-4-

(Sale Order ¶ 35 (emphasis added)).  The Sale Order further provides that, except for any

expressly Assumed Liabilities, FCA US:

> shall not be liable for any claims against the Debtors or any of their
> predecessors or affiliates, and the **Purchaser shall have no
> successor or vicarious liabilities of any kind or character**,
> including, but not limited to, any theory of . . . successor or
> transferee liability . . . **now existing or hereafter arising** . . . ."

(Sale Order ¶ 39 (emphasis added)); *see also id.* ¶ 42 (recognizing the release of any successor

liability claims against FCA US).)

10.     In addition, the Sale Order contains an injunction directing that "all

persons and entities . . . holding Claims . . . arising under or out of, in connection with, or in any

way relating to, the Debtors, the Purchased Assets, [or] the operation of the business prior to

Closing," except for Assumed Liabilities, are "forever barred, estopped and permanently

enjoined from asserting such Claims against [FCA US]."  (Sale Order ¶ 12.)

11.     Section 2.09 of the MTA provides that FCA US "shall not assume and

shall be deemed not to have assumed" any liabilities of Old Chrysler other than the expressly

Assumed Liabilities.  (MTA § 2.09.)  Section 2.09 further enumerates, "for the avoidance of

doubt," certain "Excluded Liabilities," including claims for negligence.  Section 2.09(j) thus

expressly excludes "**all Liabilities in strict liability, negligence, gross negligence or

recklessness for acts or omissions arising prior to or ongoing at Closing.**"  (MTA § 2.09(j)

(emphasis added).)

12.     The MTA defines a Product Liability Claim as:

> **any Action arising out of, or otherwise <u>relating to in any way</u> in respect of claims for personal injury, wrongful death or property damage resulting from exposure to**, or any other warranty claims, refunds, rebates, **property damage, product recalls, defective material claims,** merchandise returns and/or any similar claims, **<u>or any other claim or cause of action</u>**, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36

(emphasis added).)

13.     Section 2.08 of the MTA sets forth the specific limited liabilities assumed

by FCA US.  On October 29, 2009, section 2.08(h) was amended to expand the scope of

liabilities assumed relating to Product Liability Claims to include claims involving a vehicle sold

by Old Chrysler *before Closing* on the following specific terms:

> (h) (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all **Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles** or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, **solely to the extent such Product Liability Claims** (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and **(D) do not include any claim for exemplary or punitive damages.**

(MTA, Amendment No. 4, ¶ 1 (emphasis added).)  Relevant to Plaintiff's Complaint, therefore,

FCA US has agreed to defend only those Product Liability Claims arising from motor vehicle

accidents occurring after June 10, 2009, involving a Jeep brand vehicle manufactured by Old Chrysler, that do not include a claim for exemplary or punitive damages. On November, 19, 2009, the Court entered an order approving Amendment No. 4 to the MTA. [Bankr. Dkt. No. 5988.]<sup>5</sup>

14.     FCA US also separately agreed to add Section 2.08(p) to the MTA and assume certain limited Old Chrysler obligations to the National Highway Traffic and Safety Administration ("NHTSA") related to safety-related defects but expressly excluding any other liabilities under the National Traffic and Motor Vehicle Safety Act:

> Liabilities relating to the Sellers' notification, remedy and other obligations under 49 U.S.C. Sections 30116 through 30120 of the National Traffic and Motor Vehicle Safety Act, as amended and recodified (the "NTMVSA"), relating to vehicles manufactured by the Sellers prior to the Closing Date that have a defect related to motor vehicle safety or do not comply with applicable motor vehicle safety standards prescribed under the NTMVSA. For the avoidance of doubt, Purchaser shall not otherwise be liable for any failure by the Sellers to comply with the provisions of the NTMVSA.

(MTA, Amendment No. 2, ¶ 1.) Nothing in Section 2.08(p) authorizes punitive damages to be asserted against FCA US.

**B.     Plaintiff's Claims**

15.     Plaintiff, in his representative capacity, asserts a variety of claims against multiple defendants, including FCA US, relating to personal injury and death as a result of a multi-vehicle accident that occurred on May 12, 2014. Following removal by FCA US, on March 31, 2017, the United States District Court for the Eastern District of Pennsylvania ("E.D.

---

<sup>5</sup>     A copy of the Order and annexed Amendment No. 4 to MTA is attached as Exhibit C to the Glueckstein Declaration.

Pennsylvania.") entered an order severing Plaintiff Dearden's claims against FCA US and transferring them to the United States District Court for the Southern District of New York for referral to this Court.  [Dkt. No. 1, Ex. 204.]  On July 6, 2017, this Court entered an order reopening *In re Old Carco LLC, et al.*, Case No. 09-50002 to permit adjudication of this action in this Court.

      16.     On August 6, 2016, Plaintiff Dearden, along with two other sets of plaintiffs, filed the amended Complaint in the E.D. Pennsylvania asserting claims against FCA US for negligence (Count One), strict liability (Count Two), and punitive damages (Count Three) in connection with the May 12, 2014 accident.  (*See* Compl. ¶¶ 86-133.)

      17.     As to FCA US, Plaintiff alleges that the Deardens were driving a 1995 Jeep Grand Cherokee that they owned and was previously put into the stream of commerce by "Chrysler"—defined as FCA US—at the time of the May 12, 2014 accident.  (Compl. ¶¶ 44, 60-61.)  Plaintiff further alleges that the 1995 Jeep Grand Cherokee occupied by the decedents was defective, including because of "Chrysler" failing to utilize proper designs, failing to manufacture, assemble, sell, and distribute a car that was not crashworthy, and failing to adequately inform or warn purchasers or users of the vehicle that it was not crashworthy.  (*Id.* at ¶¶ 64-67, 87-92.)  Plaintiff also alleges that "at the time that Chrysler designed and manufactured the 1995 Jeep Grand Cherokee it knew that locating the fuel tank rearward of the rear axle made the vehicle susceptible to post-collision fuel-fed-fires."  (*Id.* at ¶ 88.)

      18.     Plaintiff goes on to assert a claim for punitive damages against FCA US on the basis of these facts and further alleges that Chrysler delayed implementing a recall for the 1995 Jeep Grand Cherokee, and failed to adequately recall it.  (*See id.* at ¶¶ 104-133.)  Plaintiff alleges that the delay was due to "Chrysler's" opposition to the recall effort.  (*Id.* at ¶ 123.)

## JURISDICTION

19.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and expressly retained jurisdiction pursuant to paragraphs 43 and 59 of the Sale Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## ARGUMENT

20.     To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, the Complaint must plead enough facts to "state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's obligation to provide the "grounds" for its entitlement to relief requires "more than labels and conclusions" and more than a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Critical here, "only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the court to draw on its own judicial experience and common sense."  *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ichbal*, 556 U.S. at 679 (internal quotations omitted).  "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558.

## I.     THE SALE ORDER BARS PLAINTIFF'S CLAIMS AGAINST FCA US

### A.     Count III Seeking Punitive Damages is Barred.

21.     The question before the Court is whether FCA US can be forced to defend a claim for punitive damages in litigation of a Product Liability Claim concerning an Old Chrysler vehicle manufactured and sold prior to the Closing Date.  The answer, even taking the facts as set forth in the Complaint as true, is no.  Plaintiff's attempts to introduce FCA US's post-closing conduct are a red herring and do not change the result.  The plain language of the controlling documents—the Sale Order and MTA—are unambiguous that Plaintiff's punitive damages claim must be dismissed.

22.     The starting point, as this Court has repeatedly recognized, is that FCA US is not a successor to Old Chrysler and that FCA US "shall have no successor or vicarious liabilities of any kind or character."  (Sale Order ¶ 39.)  This Court's Sale Order is clear that any claims "relat[ing] to the production of vehicles prior to the Closing Date" fall within the scope of the Sale Order and are barred as against FCA US unless the claim falls within one of the narrow exceptions set forth as Assumed Liabilities (as that term is specifically defined in the MTA).  (*Id.* at ¶ 35.)

23.     Plaintiff's case against FCA US results from an multi-vehicle accident that involved a 1995 Jeep Grand Cherokee manufactured and sold by Old Chrysler long before the Closing Date.  The Complaint is replete with allegations that the design, manufacture, and assembling of the Old Chrysler vehicle was negligent and defective.  (*See*, *e.g*., Compl. ¶ 92.)  In short, Plaintiff has asserted a purported Product Liability Claim—as that term is broadly defined in the MTA:

> any Action arising out of, or otherwise <u>relating to in any way</u> **in respect of claims for personal injury, wrongful death or property damage resulting from exposure to**, or any other warranty claims, refunds, rebates, **property damage, product recalls, defective material claims,** merchandise returns and/or any similar claims, <u>**or any other claim or cause of action**</u>, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36 (emphasis added).)  In other words, any claim or cause of action of any kind that is asserted in any personal injury or wrongful death action that ***relates in any way*** to a vehicle sold by Old Chrysler is a Product Liability Claim, as broadly defined by the parties in the MTA.  The definition even expressly includes claims regarding product recalls.  This definition is critical to the issue before the Court.

   24. Section 2.08(h) of the MTA originally included a provision stating that FCA US was only assuming Product Liability Claims arising in connection with the sale after the Closing Date of vehicles manufactured by Old Chrysler.  (MTA § 2.08.)  The MTA was subsequently amended to expand the scope of circumstances for which FCA US would assume liabilities for Product Liability Claims.  Section 2.08(h), as amended, provides, among other things, that FCA US will defend any Product Liability Claims arising from the sale prior to the Closing Date of vehicles manufactured by Old Chrysler.  (Amendment No. 4 to MTA, ¶ 1.)  FCA US did, however, expressly condition this expanded voluntary assumption of liabilities on certain criteria.  (*Id.*)

25.     Dispositive here, FCA US's assumption of liabilities relating to Product Liability Claims arising from the sale of Old Chrysler vehicles prior to the Closing Date is conditioned on a requirement that Product Liability Claims, "**(D) do not include any claim for exemplary or punitive damages.**"  (MTA, Amendment No. 4, ¶ 1.)  Therefore, the MTA and Sale Order expressly bar any punitive damages claim that is included as part of a Product Liability Claim asserted against FCA US pertaining to a vehicle designed, manufactured and sold before the Closing Date.

26.     There can be no dispute that Plaintiff's Complaint asserts a Product Liability Claim—as broadly defined in the MTA—against FCA US.  That is the limited universe of claims relating to accidents involving Old Chrysler vehicles that FCA US contractually assumed.  Absent such a claim, Plaintiff could not assert any such claims against FCA US because the 1995 Jeep Grand Cherokee at issue was sold by Old Chrysler long before FCA US came into existence and would otherwise be barred by the Sale Order and the MTA.  As this Court has reaffirmed, "[t]he Sale Order contained several provisions indicating that the transfer was free and clear of claims and interests in the assets and successor liability" and that FCA US would not be liable for any Claims (as broadly defined in the Sale Order) other than "Assumed Liabilities."  *In re Old Carco LLC*, 538 B.R. 674, 678 (Bankr. S.D.N.Y. 2015).

27.     Plaintiff's scattered allegations as to FCA US's conduct post-Closing Date are of no moment.  The definition of Product Liability Claim is not limited to the Closing Date and includes claims that relate in **any** way to a claim for personal injury or wrongful death.  "It is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract."  *Howard* v. *Howard*, 740 N.Y.S. 2d 71, 71 (N.Y. App. Div. 2002) (citing cases under New York

law).[6]  Moreover, "evidence outside the four corners of the document as to what was really intended or unstated or misstated is generally inadmissible. . . ." *Law Debenture Trust Co. of New York* v. *Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).  Plaintiff's claims fall within the scope of the definition of a Product Liability Claim and thus, the conditions imposed by Section 2.08(h) of the MTA (as amended in Amendment No. 4) apply, including the ban on punitive or exemplary damages.  (*See* MTA § 2.08(h).)

28.     This result is consistent with how a punitive damages claim arises under applicable Pennsylvania law.  The Pennsylvania Supreme Court has long-ago settled that, "[i]f no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an element of damages.  To this extent punitive damages must, by necessity, be related to the injury-producing cause of action." *Kirkbride* v. *Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (1989).  The relatedness tie is unavoidable because punitive damages "are a form of relief, and are not the basis for an independent cause of action." *Tennis* v. *Ford Motor Co.*, 730 F. Supp. 2d 437, 450 (W.D. Pa. 2010).

29.     Here, the underlying causes of action are Plaintiff's claim for strict liability and an improper claim for negligence, both allegedly arising from a multi-vehicle accident involving an Old Chrysler vehicle driven by Edward Dearden.  (*See* Compl. ¶¶ 39-59.) The Sale Order and MTA restrict any damages for those causes of action to compensatory damages and bar punitive damages.  The allegations regarding FCA US's purported delay in recalling the vehicle cannot take Plaintiff outside of those restrictions given the nature of the underlying claims.  The facts presented are analogous to a situation where punitive damages are

---

[6] The MTA is governed by New York substantive law.  (*See* MTA § 11.08.)

sought in a breach of contract claim. Because punitive damages cannot be recovered for breach

of contract, if a punitive damages claim is asserted, irrespective of the factual predicate, it will be

dismissed. *See*, *e.g.*, *Johnson* v. *State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 213 (W.D. Pa.

2010) (affirming dismissal of punitive damages claim for cause of action arising under contract).

30.     Plaintiff's claim for punitive damages is inextricable from the underlying

cause of action, and here, because the Sale Order and MTA bar punitive damages from being

asserted in connection with a Product Liability Claim, Count Three of the Complaint must be

dismissed.

**B.     Count I Alleging Negligence is Precluded.**

31.     Section 2.09(j) of the MTA expressly excluded from assumption all Old

Chrysler liabilities arising in "negligence, gross negligence, or recklessness for acts or omissions

arising prior to or ongoing at the Closing." (MTA § 2.09(j).) Section 2.09(j) remains unchanged

and was never subject to amendment, through Amendment No. 4 or otherwise, and continues in

full force and effect. Nonetheless, Plaintiff asserts a negligence claim against FCA US based on

a litany of allegations regarding Old Chrysler acts or omissions arising prior to the Closing Date,

including, among others:

- failing to design to minimize the risk of post-collision fire;

- designing, manufacturing, assembling, selling, and distributing a car that was not crashworthy;

- failing to direct manufacturers and assemblers to adhere to applicable safety regulators and standards;

- failing to adequately inform and warn purchasers and ultimate users;

- designing, assembling, manufacturing, selling, supplying and distributing a defective product; and

- failing to recall or repair the vehicle.

(*See* Compl. ¶¶ 86-93.)

32.     Plaintiff's assertion of a negligence claim against FCA US for Old Chrysler's conduct is a blatant violation of the Sale Order and Section 2.09(j) of the MTA. Moreover, the Sale Order is unequivocal that FCA US is impervious to successor liability for Old Chrysler's conduct.  (*See* Sale Order ¶¶ 35, 39.)  Plaintiff's negligence claim seeks to impose liability upon FCA US that was not assumed, and in fact was expressly disclaimed in the MTA and for which the Sale Order insulates FCA US.  Count I of the Complaint must also be dismissed.

## II.     PLAINTIFFS HAVE NOT ASSERTED AN INDEPENDENT CLAIM AGAINST FCA US

33.     In the event that the Court were to conclude it is possible to detach Plaintiff's punitive damages claim from the remainder of the Product Liability Claim—and it should not—the allegations set forth in the Complaint fail to plead an independent claim against FCA US, and Count Three must alternatively be dismissed on that basis.

34.     Each allegation made in the Complaint is asserted against "Chrysler." (*See* Compl. generally.)  The Complaint defines "Chrysler" to be collectively, "FCA US, LLC and Chrysler Group, LLC."  (Compl. ¶ 15.)  Chrysler Group LLC is the prior corporate name for FCA US LLC, but neither existed prior to the Closing Date.  Yet most of Plaintiff's allegations relate to events that precede the Closing Date and could only involve Old Chrysler.  Plaintiff completely ignores the critical legal distinction between Old Chrysler and FCA US by using "Chrysler" to refer to both pre- and post-Closing Date facts and events.  This is not permitted and

precludes any argument that Plaintiff seeks to bring an independent post-Closing Date claim against FCA US based solely on FCA US conduct.

35.     As Judge Gonzalez made clear in *Wolff* v. *Chrysler Group LLC (In re Old Carco LLC)*, "Old Carco and [FCA US] are distinct entities against which different claims may be asserted," and "[b]ecause [FCA US] is a separate company that paid Old Carco adequate consideration for assets under the Sale Order, [FCA US] is not liable for all claims against Old Carco."  Adv. Pro. No. 10-05007, 2010 Bankr. LEXIS 6320, at *17-18 (Bankr. S.D.N.Y. July 30, 2010).  In other words, FCA US is not and was never Old Chrysler.  Instead, "[a]ny claims against [FCA US] based upon the purchase of Old Carco's assets are limited to those liabilities assumed under the Sale Order," which "define[s] with a high degree of specificity which liabilities [FCA US] assumed from Old Carco and which liabilities Old Carco retained."  *Id.*  Moreover, the non-specific allegations in the Complaint ignore that the Sale Order is unambiguous that FCA US did not assume any successor liability and unequivocally states that the FCA US "shall have no successor or vicarious liabilities of any kind or character."  (Sale Order ¶ 39.)

36.     In support of its punitive damages claim, Plaintiff alleges, among other things, that:

- "Before this recall, Chrysler had actual knowledge that the 1993-1998 Jeep Grand Cherokee fuel tank location made the vehicle susceptible to post-collision fuel-fed-fires . . ."  (Compl. ¶ 125.)

- "Chrysler, chose, however, to consciously disregard this known hazard by delaying the recall.  Chrysler's conduct is outrageous and in reckless disregard of the safety and well-being of Mr. and Mrs. Dearden, as well as thousands of others who still drive these vehicles."  (*Id.* at ¶ 126.)

- "Before this recall, Chrysler, through its agents, ostensible agents, and employees, knew or should have known that its product, and its conduct and

lack thereof as described above created a high degree of risk of physical harm to Mr. and Mrs. Dearden." (*Id.* at ¶ 130.)

- "At some time before May 12, 2014, Chrysler put the Dearden vehicle into the stream of commerce." (*Id.* at ¶ 60.)

- "At the time that Chrysler designed and manufactured the 1995 Jeep Grand Cherokee it knew that locating the fuel tank rearward of the rear axle made the vehicle susceptible to post-collision fuel-fed-fires. (*Id.* at ¶ 88.)

In fact, Plaintiff incorporates into his claim for punitive damages *every* allegation in the Complaint that clearly on its face relates only to Old Chrysler. (Compl. ¶104.) There can be no serious dispute that FCA US did not contractually agree to assume liability for punitive damages based on conduct of Old Chrysler. (*See* MTA § 2.08, Amendment No. 4.) Furthermore, Judge Glenn recently held that punitive damages against a buyer based on the conduct of the insolvent seller are not available under federal bankruptcy law. *In re Motors Liquidation Co.*, Case No. 09-50026, 2017 WL 2963374, at *7 (Bankr. S.D.N.Y. July 12, 2017) (holding that punitive damages are never available in the case of an insolvent debtor and citing 11 U.S.C. § 726(a).)

37. While it has been held in the General Motors ignition switch litigation— albeit on very different facts and contracts—that a plaintiff may be able to assert a "genuinely independent claim" premised solely on the buyer's post-sale knowledge and conduct, the Court held that "it is not acceptable, as [plaintiff's] Complaint does in several paragraphs, to base allegations on generalized knowledge of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *In re Motors Liquidation Co.*, 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017). Plaintiff's Complaint here fails to do so. The GM Court further explained that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order." *In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr.

S.D.N.Y. 2015), *aff'd in part, rev'd in part, vacated in part*, *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016).  Similarly here, Plaintiffs' generalized allegations improperly conflating Old Chrysler and FCA US actions demonstrate that there is no independent claim asserted against FCA US in the Complaint.[7]

38.     Plaintiff's claims are nothing more than a Product Liability Claim against Old Chrysler that improperly seeks to impose punitive damages on FCA US.  As a result, Count Three of the Complaint seeking punitive damages must be dismissed.

## CONCLUSION

39.     For the foregoing reasons, FCA US respectfully requests that the Court (i) grant FCA US's Motion, (ii) dismiss, with prejudice, Count One and Count Three of the Complaint filed against FCA US, and (iii) awarding FCA US such other or further relief as the Court deems just and proper, including, but not limited to, all lawful costs and attorneys' fees.

Dated:   August 25, 2017
         New York, New York

                                       /s/ Brian D. Glueckstein
                                       Brian D. Glueckstein
                                       SULLIVAN & CROMWELL LLP
                                       125 Broad Street
                                       New York, New York  10004
                                       Telephone:     (212) 558-4000

                                       *Counsel for FCA US LLC*

---

[7]   Any obligation of FCA US with respect to a recall of the Deardens' 1995 Jeep Grand Cherokee was undertaken contractually pursuant to Section 2.08(q) of the MTA, as amended in Amendment No. 2.  Nothing in Section 2.08(q), however, provides that punitive damages are available or otherwise alters, amends or overrides the language in Section 2.08(h), as amended in Amendment No. 4.  FCA US reserves all rights with respect to the underlying recall itself.