```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :     Chapter 11
OLD CARCO LLC, et al..                                      :
                                                            :     Case No. 09-50002 (SMB)
                                      Debtors.              :
------------------------------------------------------------X
                                                            :
DAVID DEARDEN, as Executor of the Estate                    :
of Edward J. Dearden, et al.,                               :
                                                            :
                                      Plaintiffs,           :
                                                            :     Adv. Pro. No. 17-01062 (SMB)
                – against –                                 :
                                                            :
FCA US LLC and CHRYSLER GROUP LLC,                          :
                                                            :
                                      Defendants.           :
------------------------------------------------------------X
```

## MEMORANDUM DECISION GRANTING IN PART
## AND DENYING IN PART MOTION TO DISMISS

**A P P E A R A N C E S:**

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, NY 10019

    Daniel F.X. Geoghan, Esq.
    Mark Tsukerman, Esq.
        Of Counsel

    – and –

SALTZ, MONGELUZZI, BARRETT &
BENDENSKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103

    Robert J. Mongeluzzi, Esq.
    Larry Bendesky, Esq.
    David L. Kwass, Esq.
    David J. Langsam, Esq.
        Of Counsel

*Attorneys for Plaintiffs*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

  Brian D. Glueckstein, Esq.
    Of Counsel

*Attorneys for Defendant FCA US LLC*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

  Plaintiff David Dearden ("Plaintiff"), as executor of the estates of Edward J. Dearden and Theresa J. Dearden ("Decedents"), filed an action seeking to recover, *inter alia*, compensatory and punitive damages from FCA US LLC f/k/a Chrysler Group, LLC ("New Chrysler") arising out of a fatal motor vehicle accident. New Chrysler has moved to dismiss the punitive damage claim asserted in Count Three of the Plaintiff's Amended Complaint[1] primarily on the ground that it is barred by this Court's order (the "Sale Order")[2] approving the sale of substantially all of the assets of Old Carco LLC f/k/a Chrysler, LLC and its debtor affiliates (collectively "Old Chrysler") free and clear of all liens, claims and interests to New Chrysler. (*See FCA US LLC's Memorandum of Law in Support of Its Motion to Dismiss Counts One and Three of Plaintiff's Amended Complaint*, Aug. 25, 2017 ("*Motion*") (ECF Doc. # 8); *see also FCA US LLC's Reply in Support of Its Motion to Dismiss Count Three of Plaintiff's Amended Complaint*, dated

---

[1]  The *Motion* initially sought the dismissal of Count One as well, but that request has been withdrawn with prejudice.

[2]  The Sale Order is attached as Exhibit A to the *Declaration of Brian D. Glueckstein in Support of FCA US LLC's Motion to Dismiss Counts One and Three of Plaintiff's Amended Complaint*, dated Aug. 25, 2017 ("*Glueckstein Declaration*") (ECF Doc. # 9.)

Sept. 29, 2017 ("*Reply*") (ECF Doc. # 13).)[3]  The Plaintiff opposes the *Motion*, contending that Count Three asserts a claim based on post-sale conduct that is not barred by the Sale Order.  (*See Plaintiff's Response to FCA US LLC's Motion to Dismiss Counts One and Three of the Amended Complaint*, dated Sept. 15, 2017 (ECF Doc. # 11).)

For the reasons that follow, the *Motion* is granted except to the extent that Count Three sets forth an independent claim limited to New Chrysler's post-Closing conduct, and leaves to the presiding non-bankruptcy court the determination of whether the Plaintiff has asserted a legally sufficient claim.

## BACKGROUND

On May 12, 2014, the Decedents suffered fatal injuries as the result of a multi-vehicle accident in Pennsylvania.  The Decedents were driving a 1995 Jeep Grand Cherokee (the "Vehicle") manufactured and sold by Old Chrysler, which burst into flames when another vehicle collided with the Vehicle's rear.  In January 2016, the Plaintiff and other victims of the accident or their personal representatives commenced an action in Pennsylvania state court against seventeen defendants, including New Chrysler.[4]  New Chrysler removed the state court action to the United States District Court for the Eastern District of Pennsylvania, Dearden filed an Amended Complaint,[5]

---

[3]  "ECF Doc. #" refers to the electronic docket in this adversary proceeding.  "ECF Main Case Doc. #" refers to the electronic docket in Case No. 09-50002 (SMB).

[4]  The Amended Complaint separately named as defendants FCA US LLC and Chrysler Group, LLC. They are the same entity, to wit, New Chrysler.

[5]  Neither party attached the Amended Complaint to their submissions.  Dearden submitted a proposed Second Amended Complaint blacklined against the existing Amended Complaint, (ECF Doc. # 14-2), and the Court has used the blacklined copy to discern the allegations of the Amended Complaint.

the Pennsylvania District Court severed the claims against New Chrysler, and transferred the Plaintiff's action to the United States District Court for the Southern District of New York for reference to this Court solely to interpret the Sale Order.

Counts One, Two and Three of the Amended Complaint are directed against New Chrysler. Count One is grounded in negligence and seeks compensatory (but not punitive) damages arising from the fatal injuries proximately caused by Old Chrysler's negligent design and manufacture of the Vehicle, and specifically, the placement of the fuel tank rearward of the rear axle which allegedly made the Vehicle susceptible to post collision fuel-fed-fires. (¶¶ 87-88, 92.)[6] Count Two sounds in strict product liability, and seeks compensatory (but not punitive) damages for the same injury based on the same defect. Thus, Counts One and Two are based on Old Chrysler's pre-sale wrongful conduct.

In contrast, Count Three purports to assert claims based on New Chrysler's post-sale wrongful conduct. It seeks compensatory and *punitive* damages proximately caused by New Chrysler's failure to warn the Decedents about the fuel tank design flaw, the delay in recalling the Vehicle and vehicles with similar fuel tank design flaws, the failure to notify the Decedents about a recall in a timely manner, and ultimately, the failure to retrofit the Vehicle to correct the safety hazard prior to the accident. The Amended Complaint alleges that in 2009, the National Highway Traffic Safety Administration ("NHTSA") began to investigate fires in Jeep sport-utility vehicles, including Jeep Grand Cherokee model years 1993-1998. (¶¶ 105, 106.) "Chrysler," the

---

[6] The parenthetical "(¶ _)" refers to the paragraphs of the Amended Complaint.

term used in the Amended Complaint, insisted during the probe that the 1993-1998 Cheap Grand Cherokees were not defective, and from 2009 to 2013, "engaged in legal battles, advertising campaigns and lobbying efforts, all designed to delay or forestall a product recall." (¶ 111.) In 2013, "Chrysler" agreed to issue a recall relating to these vehicles, and the Vehicle was part of the recall. (¶¶ 112, 114.) The recall involved the notification to vehicle owners and the installation of a trailer hitch assembly that was intended to add protection to the fuel tank in rear-end collisions. (¶ 115.) "Chrysler" initiated the recall in August 2013, and was required to notify owners of the affected vehicles within sixty days, but did not notify the Decedents prior to the May 12, 2014 accident. (¶¶ 64-65, 116-18.) The Amended Complaint alleges that "Chrysler" knew of the dangerous design defect but actively opposed and delayed the recall, and "[a]s a direct and proximate result of Chrysler's aforesaid punitive conduct," the Decedents were killed in the accident. (¶¶ 123-33.)

    **A.**    **The Bankruptcy Sale**

On April 30, 2009, Old Chrysler filed these chapter 11 cases. That same day, Old Chrysler and New Chrysler entered into a Master Transaction Agreement (the "MTA")[7] by which New Chrysler agreed to purchase substantially all of the assets of Old Chrysler. The Bankruptcy Court approved the transaction set forth in the MTA, as amended, and the sale closed on June 10, 2009 the ("Closing Date").

---

[7]    The MTA is attached to the *Glueckstein Declaration* as Exhibit B.

The Sale Order authorized the transfer of the purchased assets "free and clear of all Claims except for Assumed Liabilities" (as defined in the MTA) and free of successor liability. (Sale Order ¶ 9.) It stated, in pertinent part:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) *relates to the production of vehicles prior to the Closing Date* or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. . . . Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims . . . now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 35 (emphasis added); *see also* ¶¶ 39, 42.)

Section 2.09 of the MTA enumerated, "for the avoidance of doubt," certain "Excluded Liabilities" that New Chrysler did not assume. They included "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing." (MTA § 2.09(i).) The MTA broadly defined an excluded Product Liability Claim as:

> any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler].

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, at ¶ 36.)

By Stipulation and Order, dated Nov. 19, 2009, the parties added section 2.08(h) to the MTA to expand the scope of Assumed Liabilities relating to Product Liability Claims. (ECF Main Case Doc. # 5988.) As amended, New Chrysler assumed liability for

6

post-Closing Date accidents involving vehicles manufactured and sold by Old Chrysler before the Closing, but the assumption expressly excluded liability for punitive damages. Under the amendment, Assumed Liabilities included:

> (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) *do not include any claim for exemplary or punitive damages.*

(MTA, Amendment No. 4, ¶ 1 (emphasis added).)[8]

Finally, the Sale Order acknowledged New Chrysler's obligation to comply with the National Transportation and Motor Vehicle Safety Act ("NTMVSA"), as applicable to the business of New Chrysler after the Closing, and New Chrysler further

> agreed to assume as Assumed Liabilities under the Purchase Agreement and this Sale Order the Debtors' notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not to [sic] comply with applicable motor vehicle safety standards prescribed under the NTMVSA. The Purchaser shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

(Sale Order ¶ EE.) Aside from any obligations that the NTMVSA might impose relating to safety concerns, New Chrysler did not undertake a contractual obligation to repair any defects in cars manufactured by Old Chrysler, *Grimstad v. FCA US LLC* (*In re Old Carco LLC*), Adv. Pro. No. 16–01204 (SMB), 2017 WL 1628888, at *4 (Bankr. S.D.N.Y.

---

[8] Copies of the November 19, 2009 Stipulation and Order and Amendment No. 4 are annexed to the *Glueckstein Declaration* as Exhibit C.

7

Apr. 27, 2017), except to the extent required by the factory or extended warranties, and in those cases, New Chrysler's obligation is limited to the cost of parts and labor.[9] *Burton v. Chrysler Group, LLC* (*In re Old Carco LLC*), 492 B.R. 392, 398 (Bankr. S.D.N.Y. 2013).

### B.    The *Motion*

New Chrysler has moved to dismiss Count Three pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  The principal issue is whether Count Three asserts claims for punitive damages that, even if legally sufficient, are nonetheless barred by the Sale Order and MTA, as amended.  New Chrysler argues, in the main, that Count Three is a Products Liability Claim within the meaning of the Sale Order and the MTA.  It involves a post-Closing accident relating to a pre-Closing design defect, and moreover, claims arising from or relating to a product recall fall within the definition of Product Liability Claims under Amendment No. 4.  Accordingly, liability for punitive damages is excluded.  The Plaintiff contends that it asserts claims based on New Chrysler's breach of independent duties and is limited to New Chrysler's post-Closing wrongful conduct.

In addition, New Chrysler argues that Count Three conflates the acts and omissions of Old Chrysler and New Chrysler, and thereby seeks to recover punitive damages based on Old Chrysler's wrongdoing.  The Amended Complaint refers to the

---

[9]   Given the age of the Vehicle at the time of the accident (nearly twenty years), I assume that any factory or extended warranty had expired long before the sale.  In any event, the Amended Complaint does not assert a repair claim under a factory or extended warranty.

8

defendant New Chrysler simply as "Chrysler," but "Chrysler" sometimes refers to Old Chrysler. For example, Count Three incorporates all of the preceding paragraphs in the Amended Complaint, and "Chrysler," as used in Counts One and Two, refers to the acts and omissions of Old Chrysler. In other places, Count Three refers to the knowledge of "Chrysler" regarding the fuel tank design defect,[10] its response to the NHTSA probe that began in 2009 or the delay in issuing the recall without identifying a time frame. (*E.g.*, ¶¶ 110, 111, 123, 125, 126, 129-33.) "Chrysler" in these instances could mean Old Chrysler or New Chrysler. Finally, at other places, Count Three refers to acts or omissions that occurred after the Closing Date and could only be referring to New Chrysler. (*E.g.*, 112, 116, 118-22.)

The Plaintiff proposes to clear up any confusion through a Second Amended Complaint that will clearly distinguish between Old Chrysler and New Chrysler. The decision whether to allow that amendment belongs to the non-bankruptcy court presiding over the action. *See In re Motors Liquidation Co.*, 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017) ("*GM/Pitterman*") ("Whether to permit the Pitterman Plaintiffs to amend their complaint to comport with this ruling is up to the Connecticut District Court hearing that action."). Nevertheless, the allegations of the Amended Complaint are sufficiently clear to allow the Court to decide the *Motion*.

## DISCUSSION

The legal standard governing the *Motion* requires some brief discussion. The standard that governs a motion to dismiss pursuant to Federal Rule of Civil Procedure

---

[10] The Plaintiff has not argued that Old Chrysler's knowledge regarding the fuel tank design defect is imputed to New Chrysler.

12(b)(6) is a familiar one. Briefly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition to the four corners of the complaint, a court may consider documents subject to judicial notice, including, in this case, the Sale Order, the MTA and the amendments to the MTA. *Burton*, 492 B.R. at 402.

While these principles apply to the *Motion*, the Court's role is more limited. It acts a "gatekeeper," and must determine whether the Amended Complaint purports to allege a claim that is barred by the Sale Order or the MTA, as amended. If the claim passes the gate, the non-bankruptcy court presiding over the action must decide if any surviving claim is a legally sufficient claim under applicable non-bankruptcy law. *See GM/Pitterman*, 568 B.R. at 222.

The rules that govern the Court's gatekeeping function are well-settled and have been discussed by this Court, other courts hearing Chrysler matters and the GM courts that have heard similar issues. Under the clear and unambiguous language of the Sale Order and the MTA, as amended, New Chrysler acquired Old Chrysler's assets free and clear of all claims and interests, including claims based on successor liability, and New Chrysler is only liable for the claims against Old Chrysler to the extent they are Assumed Liabilities under the Sale Order or the MTA, as amended. *In re Old Carco LLC*, 538 B.R. 674, 678 (Bankr. S.D.N.Y. 2015). The original MTA expressly excluded any liability for Product Liability Claims, a term that included claims based on product recalls, but the MTA was modified post-Closing. Under Amendment No. 4, New Chrysler assumed

10

liability for damages arising from or relating to post-Closing Date accidents involving vehicles manufactured and sold by Old Chrysler prior to the closing, but the modification expressly excluded liability for punitive damages.  New Chrysler also assumed Old Chrysler's obligations under the NTMVSA to notify owners and remedy vehicles manufactured by Old Chrysler that posed safety concerns or did not comply with safety standards, but did not otherwise agree to be liable for any failure by Old Chrysler to comply with the NTMVSA.  (Sale Order ¶ EE.)  The net effect of these provisions is that New Chrysler assumed liability to pay *compensatory* damages arising from post-Closing accidents involving vehicles manufactured by Old Chrysler, including accident claims arising from or relating to product recalls.

However, a § 363 sale order cannot bar a claim that arises from post-sale wrongful conduct.  *See Elliot v. General Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 156 (2d Cir. 2016) ("[A] bankruptcy court may approve a § 363 sale 'free and clear' of successor liability claims if those claims flow from the debtor's ownership of the sold assets.  Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim [and, (3)] there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable.")  Thus, to survive New Chrysler's *Motion*, Count Three must allege liability for punitive damages based solely on the post-Closing acts of New Chrysler.  *Overton v. Chrysler Group LLC*, Case No.: 2:17-cv-01983-RDP, 2018 WL 847772, at *5 n. 6 (D. Mont. Feb. 13, 2018) (limit on punitive damages under Amendment No. 4 does not govern a claim based on post-sale conduct); *Ingman v. FCA US LLC*, CV-17-00069-GF-BMM, 2017 WL 5465521, at *4 (D. Mont. Nov. 14,

11

2017) ("The MTA and Amendment No. 4 also do not govern Plaintiff's claims here. The punitive damages allegations, in the manner pled in Plaintiff's Complaint, constitute an independent claim based only on FCA US' own post-closing wrongful conduct.") (internal quotation marks and citation omitted); *Rodriquez v. FCA US LLC*, Case No. 16-cv-05083-BLF, 2017 WL 278540, at *5 (N.D. Cal. Jan. 23, 2017) ("[N]either the MTA nor Amendment No. 4 applies to Plaintiff's punitive damages claim . . . because . . . they are not asserting a negligence claim against FCA US for any pre-bankruptcy conduct."); *Mathias v. Fiat Chrysler Automobiles, N.V.*, Case No. 5:16-cv-01185-EJD, 2016 WL 5109967, *4 (N.D. Cal. Sept. 21, 2016) (post-sale claim that New Chrysler carried out its 2014 recall obligations in a dangerous and improper manner does not implicate limit on punitive damages under Amendment No. 4); s*ee GM/Pitterman*, 568 B.R. at 231 ("To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct"); *cf. Burton*, 492 B.R. at 406 (Sale Order does not bar claims arising from the breach of a duty voluntarily assumed by New Chrysler after the Closing Date).

      As noted earlier, Count Three includes allegations of wrongful conduct by New Chrysler after the Closing Date. From 2009 to 2013, Chrysler engaged in actions to delay a product recall. (¶ 111.) In addition, New Chrysler initiated the recall on or around August 6, 2013, was required to notify vehicle owners about the recall and installation of a trailer hitch assembly within sixty days of the recall announcement, but failed to notify the Decedents prior to the May 12, 2014 fatal accident. (¶¶ 116-18.) Furthermore, non-bankruptcy law may impose on an asset buyer a duty to warn owners of products manufactured by its seller that the products are defective or pose a danger.

*Burton*, 492 B.R. at 405.  Finally, the NTMVSA may impose a continuing duty on a purchaser at a § 363 asset sale to notify owners about safety concerns and recall and retrofit vehicles manufactured by its seller, although it is doubtful that the breach of the duty under the NTMVSA gives rise to a private right of action.  *See Grimstad*, 2017 WL 1628888, at *5.  As discussed, however, the Court is not concerned with whether the claims in Count Three are legally sufficient, *see In re Motors Liquidation Co.*, 541 B.R. 104, 141 (Bankr. S.D.N.Y. 2015) ("New GM is correct that obligations, if any, that it had to recall or retrofit were not Assumed Liabilities, and that New GM is not responsible for any failures of Old GM to do so.  But whether New GM had a duty to recall or retrofit previously sold Old GM vehicles that New GM did not manufacture is a question of nonbankruptcy law."), but only with whether they pass through the gate.  Here, they do because they allege post-Closing conduct as their basis.

This conclusion necessarily rejects New Chrysler's argument that a post-Closing breach of the duty to warn, recall, notify or retrofit is still a Product Liability Claim that does not pass through the gate.  (*See Motion* ¶¶ 27-30; *Reply* ¶ 8.)  Although Count Three arises from and relates to a product recall of a vehicle manufactured by Old Chrysler, and fits within the definition of a Product Liability Claim, punitive damages are not automatically barred.  For example, if New Chrysler had intentionally damaged the Vehicle in the process of retrofitting it following the recall, the resulting claim would also fit the definition of Product Liability Claim but could not be barred by the Sale Order.  At bottom, a post-Closing breach of an independent duty gives rise to a post-Closing right to payment, and the "free and clear" provisions of the Sale Order cannot cut off New Chrysler's liability for its own wrongful, post-Closing conduct.  *See In re*

13

*Motors Liquidation Corp.*, 829 F.3d at 156.

New Chrysler's argument nonetheless highlights the practical difficulties presented by this case. Although the contours of the gate I keep are relatively easy to articulate, the ultimate question of New Chrysler's liability for punitive damages under Count Three comes down to a question of proximate cause. *Cf. Burton*, 492 B.R. at 392 (concluding that plaintiff's post-Closing failure to warn claim was barred by the Sale Order because the breach of any post-Closing duty to warn did not proximately cause plaintiff's economic injury). Counts One and Two allege directly or through incorporation by reference that the proximate cause of the Decedents' fatal injuries was Old Chrysler's defective design of the fuel tank. This is a Product Liability Claim that may subject New Chrysler to liability for compensatory but not punitive damages. Count Three, which also incorporates the same proximate cause allegation, separately alleges that the proximate cause of the accident was New Chrysler's post-Closing breach of its independent duties to warn, recall, notify and retrofit. For the reasons stated, this cause of action, if legally sufficient, is not barred by the Sale Order or the MTA. In other words, if the proximate cause of the Decedents' fatal injuries, as alleged in Counts One and Two, was the defective design and manufacture of the Vehicle by Old Chrysler, the Plaintiff cannot recover punitive damages. If, on the other hand, the proximate cause of the Decedents' fatal injuries was due solely to New Chrysler's failure to warn, recall, notify or retrofit as alleged in Count Three, rather than the design flaw itself, the claim for punitive damages would not be barred by the Sale Order or the MTA, as amended.

New Chrysler may be right that all of the claims are inextricably linked and Count Three is nothing more than the Product Liability Claim alleged in Counts One and Two.

(*Motion* ¶ 30.)  Indeed, Old Chrysler's defective design is the *sine qua non* of the Plaintiff's post-Closing claim.  However, assuming that the Plaintiff can assert legally sufficient claims based solely on New Chrysler's post-Closing wrongful conduct, the question of what proximately caused the Decedents' fatal injuries is for the factfinder.

Accordingly, the *Motion* is granted dismissing the claim in Count Three to recover punitive damages except to the extent that the Plaintiff can assert legally sufficient claims against New Chrysler based solely on its own post-Closing wrongful conduct.  The Court has considered the remaining arguments made by the parties, and concludes that they lack merit.  The parties are directed to settle an order consistent with this opinion that will also provide for the re-transfer of the civil action to the United States District Court for the Eastern District of Pennsylvania.

Dated:   New York, New York
         March 15, 2018

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge